UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARRIE CALCAGNO and PRAVEEN PATHANGI, individually and on behalf of all others similarly situated,<br>Plaintiffs,<br>v.<br>THE SCOTTS COMPANY LLC and DOES 1-20,<br>Defendants. | Case No.: 3:25-cv-02661-GPC-DEB<br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br>**[ECF No. 12]** |

## INTRODUCTION

In this case, Plaintiffs allege that Defendant The Scotts Company, LLC ("Scotts"), engaged in false advertising by representing certain soil and fertilizer products as "organic" when the products were allegedly not organic because they contained "forever chemicals." ECF No. 8 ¶ 1. Before the Court is Defendant Scotts' Motion to Dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 12 at 2. For the reasons set forth below, the Court GRANTS Defendant's Rule 12(b)(6) motion to dismiss Plaintiffs' claims.

## BACKGROUND

### I. Factual Background

This case concerns Defendant's advertising of its Miracle-Gro organic soil and fertilizer products ("the Products"). ECF No. 8, ¶ 1.

On March 20, 2025, Plaintiff Carrie Calcagno purchased Scotts' Miracle-Gro Organic Raised Bed & Garden Soil and Miracle-Gro Organic Outdoor Potting Mix from a Target store in La Mesa, California. *Id.* ¶ 5. In February or March of 2025, Plaintiff Praveen Pathangi purchased Scotts' Miracle-Gro Organic Raised Bed & Garden Soil from a Home Depot store in San Diego, California. *Id.* ¶ 7. Both named Plaintiffs reviewed the Product labels and relied on the representation that the Products were organic when deciding to purchase the Products. *Id.* ¶¶ 5, 7.

The named Plaintiffs conducted laboratory tests of various Miracle-Gro organic soil and fertilizer Products ("the Products") with the assistance of qualified expert technicians and consultants. *Id.* ¶ 30. Plaintiffs tested the actual Products that they individually purchased as well as several other Miracle-Gro organic Products, which were obtained from different locations in Northern and Southern California, New York, New Jersey, and Oregon in 2024 and 2025. *Id*. The investigation revealed that all the tested Products contained numerous perfluoroalkyl and polyfluoroalkyl substances ("PFAS")—highly resistant synthetic chemicals. *Id.* ¶¶ 23, 33. These chemicals are also referred to as "forever chemicals." *Id.* ¶ 1.

Specifically, Plaintiffs allege that each of the tested Products contained one or both of the two most studied types of PFAS—perfluorooctanoic acid (PFOA) and perfluorooctane sulfonate (PFOS)—both of which have been declared dangerous substances by the EPA. *Id.* ¶ 23; ¶¶ 34–35, 37–38, 40, 42, 44, 46, 48. Further, Plaintiffs allege that each tested product contained PFAS in amounts that exceeded certain thresholds identified by the EPA. *Id.*

Plaintiffs allege that PFAS persist and accumulate in the food chain when released into the environment and build up in the body when humans consume PFAS-contaminated food. *Id.* ¶ 24. Plaintiffs further allege that exposure to PFAS—even at low levels—can accumulate in the human body over time and cause severe adverse health effects. *Id.* ¶ 24. Thus, even a small amount of PFAS exposure can negatively impact health. *Id.* Plaintiffs assert that PFAS do not fall into any definition of organic, which Plaintiffs define using Merriam-Webster's definition: "of, relating to, or derived from living organisms." *Id.* ¶¶ 22, 28. Thus, Plaintiffs assert that the Products—which contain PFAS—are misleadingly labeled as organic. *Id.* ¶¶ 1, 33.

Plaintiffs argue that Defendant refers to the products as organic to induce consumers into believing that they contain "only naturally occurring, non-synthetic ingredients." *Id.* ¶ 2. They further allege that Defendant fails to disclose the presence of PFAS in its Products because it knows that such information would impact consumers' purchasing decisions. *Id.* Finally, Plaintiffs allege that they would not have purchased, or would have paid less money for, Defendant's organic products had they known the products contain PFAS. *Id.* ¶ 3. In sum, Plaintiffs allege that Scotts' marketing, advertisement, and representations regarding the Products are false, misleading, and deceptive. *Id.* ¶ 58.

## II. Procedural Background

Plaintiffs brought this class action lawsuit on behalf of all persons who purchased any Miracle-Gro organic soil and fertilizer Products in California for their personal use within the applicable statute of limitations period. *Id.* ¶ 59. They allege violations of California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA"). *Id.* ¶¶ 65-107. The complaint also includes causes of action for breach of express and implied warranty, as well as unjust enrichment. *Id.* ¶ 108-129.

On February 5, 2026, Defendant filed the present motion to dismiss the operative complaint for failure to state a claim and lack of subject matter jurisdiction. ECF No. 12. Plaintiffs have opposed the motion, ECF No. 17, and Defendant has filed a reply in support. ECF No. 20.

## LEGAL STANDARD

Defendant moves to dismiss Plaintiffs' complaint under both Federal Rule of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6).[1]

### I. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint fails to state or allege sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When reviewing a Rule 12(b)(6) motion, the court accepts all facts alleged in the complaint as true and draws all reasonable inferences in favor of the non-moving party. *Chubb Custom Inc. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).

---

[1] "Rule" or "Rules" refer to the Federal Rule of Civil Procedure unless otherwise noted.

"Where a motion to dismiss is granted, 'leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *Corbett v. Pharmacare U.S., Inc.*, 544 F. Supp. 3d 996, 1003 (S.D. Cal. 2021) (quoting *DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655, 658 (9th Cir. 1992)).

**A. Rule 9(b)**

Because Plaintiffs' claims regarding the allegedly misleading misrepresentations and omissions on Defendant's Product labels sound in fraud, the claims in their complaint must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (9th Cir. 2009); *Castillo v. Prime Hydration LLC*, 748 F. Supp. 3d 757, 768 (N.D. Cal. 2024). Rule 9(b) requires that claims alleging fraud must "state with particularity" the circumstances constituting fraud. Fed. R. Civ. P. 9(b). "A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kavport Package Express, Inc.*, 995 F.2d 531, 540 (9th Cir. 1989). This generally means that claims sounding in fraud must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation and internal quotation marks omitted).

**II. Rule 12(b)(1)**

Federal Rule of Procedure ("Rule") 12(b)(1) allows defendants to seek dismissal of a claim or action for a lack of subject matter jurisdiction, including a lack of Article III standing. *Culture of Life Fam. Servs., Inc. v. Bonta*, 789 F. Supp. 3d 902, 917 (S.D. Cal. 2025). Dismissal under Rule 12(b)(1) is appropriate if the complaint, considered in its entirety, fails to allege facts on its face that are sufficient to establish subject matter jurisdiction. *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation,* 546

F.3d 981, 984–85 (9th Cir. 2008). Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction. As a result, the plaintiff bears the burden of proving that the case is properly in federal court. *McCauley v. Ford Motor Co*., 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. General Motors Acceptance Corp*., 298 U.S. 178, 189 (1936)).

Here, Defendant raises a facial attack on jurisdiction. ECF No. 12, at 15. "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co*., 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).

## DISUCSSION

### I. Request for Judicial Notice

Defendant asks the Court to take judicial notice of several exhibits, including (1) the full labels of each Product at issue bearing stamps of approval from the California Department of Food & Agriculture ("CDFA"); (2) the CDFA's list of registered "organic input material" products, updated on both October 16, 2018, and June 27, 2025; (3) an EPA publication titled "Soil Screening Guidance: Technical Background Document, Part 1: Introduction"; (4) an EPA publication titled "Regional Screening Levels (RSLs) – Frequent Questions"; (5) an EPA publication titled "Regional Screening Level Summary Table"; and (6) a United States Department of Agriculture publication titled "Labeling Organic Products." ECF No. 12-2. Plaintiffs do not oppose Defendant's request as to the

EPA publication on soil screening guidance or the EPA RSL summary table. ECF 18, at 2. Plaintiffs oppose the rest of Defendant's request for judicial notice. *Id.*

**A. Legal Standard**

"When considering a motion to dismiss, a court typically does not look beyond the complaint in order to avoid converting a motion to dismiss into a motion for summary judgment." *Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163 F. Supp. 3d 755, 761 (C.D. Cal. 2015). Even so, "a court may properly take judicial notice of (1) material which is included as part of the complaint or relied upon by the complaint, and (2) matters in the public record." *Id.* at 762.

Federal Rule of Evidence 201 provides that a court "may judicially notice a fact that is not subject to reasonable dispute," either because it is (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court can therefore "take judicial notice of matters of public record," but "cannot take judicial notice of disputed facts contained in such public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019).

"Just because [a] document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja*, 399 F.3d at 999. To the extent a party asks that a court take judicial notice of an exhibit for its truth, the requesting party should accordingly identify what facts within the document it seeks to have judicially noticed. *See Capaci v. Sports Research Corp.*, 445 F. Supp. 3d 607, 617 (C.D. Cal. 2020).

The court may take notice of such facts on its own, and "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c).

### B. Product Labels with Appended CDFA Approvals

Defendant seeks judicial notice of the full labels of each Product at issue. ECF No. 12-1, at 5-53. Specifically, Defendant asks the Court to judicially notice the provided images of the labels, many of which display an appended stamp or label indicating CDFA approval.[2] *Id.* The exhibit in question also includes emails from the CDFA to Defendant regarding the label approval. ECF No. 12-1, at 25.

The Court takes judicial notice of the full product labels themselves, as they form the basis of Plaintiffs' complaint. *Welk v. Beam Suntory Imp. Co*., 124 F. Supp. 3d 1039, 1042 (S.D. Cal. 2015). Further, Plaintiffs have already included the front Product labels in their own complaint. *See* ECF No. 8-1, at 2-4. However, the Court does not take judicial notice of the CDFA approval stamps adhered to each image of the Product labels, nor the emails between the CDFA and Defendant. As presented to the Court, neither the images of the Product labels bearing the CDFA approval stamp nor the emails between Defendant and the CDFA are matters of public record, and it is not clear that either the altered Product labels or emails are from a source "whose accuracy cannot reasonably be questioned." *Hsieh v. FCA US LLC*, 440 F. Supp. 3d 1157, 1161 (S.D. Cal. 2020). Thus, the Court does not take judicial notice of the CDFA stamps on the labels or the CDFA emails.

### C. Registered OIM Products Lists

Defendant next seeks judicial notice of the CDFA's list of "Registered OIM Products," as updated on both October 16, 2018, and June 27, 2025. ECF No. 12-1, at 55-138, 199-291. This list of Registered Organic Input Material is issued by the California

---

[2] Each stamp reads "Label Reviewed California Department of Food and Agriculture. CDFA makes no representation as to product value, safety, or use for intended purpose. Labeling is in accordance with the requirements of Section 14631 of the Food and Agriculture Code and Sections 2300 through 2326 of the California Code of Regulations." Each stamp also bears a date and handwritten initials. *See*, *e.g.*, 12-1, at 7.

Department of Food and Agriculture and is a matter of public record. Plaintiffs initially opposed judicial notice of the Registered OIM Products lists, ECF No. 18, at 3, though they did not question their authenticity. However, at oral argument, Plaintiffs conceded to judicial notice of the fact that the Products are listed on the Registered OIM Products lists. Thus, the official CDFA lists of Registered Organic Input Material are appropriate subjects for judicial notice. *See Welk*, 124 F. Supp. 3d at 1042.

**D. Other EPA and USDA Publications**

Defendants next seek judicial notice of various publications from the EPA and USDA's websites. "Courts may take judicial notice of the fact that an internet article is available to the public, but it may not take judicial notice of the truth of the matters asserted in the article." *Spy Optic, Inc.*, 163 F. Supp. 3d at 762. However, while the Court may take judicial notice of the fact that the relevant publications are available to the public, the Court finds that the existence of these publications is irrelevant to the Court's analysis regarding whether the allegations in Plaintiffs' complaint are sufficient to withstand a motion to dismiss. *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1030 (C.D. Cal. 2015) (denying judicial notice of information in press releases and publicly available news articles because it was irrelevant for purposes of the motion to dismiss). Rather, the publications relate to the merits of Plaintiffs' claims and not the sufficiency of the complaint. *See Kanan v. Thinx Inc.*, No. CV 20-10341 JVS (JRPX), 2021 WL 4464200, at *5 (C.D. Cal. June 23, 2021). Thus, the Court declines Defendant's request for judicial notice as to the EPA's Soil Screening Guidance publication, Regional Screening Levels FAQ publication, and the Regional Screening Level summary table publication; as well as the USDA's Labeling Organic Products publication.

**II. Plaintiffs Have Standing to Assert Their Claims**

Defendant argues that this Court lacks subject matter jurisdiction over the case because Plaintiffs lack standing to bring their claims. Defendant challenges Plaintiffs'

standing on multiple grounds. First, Defendant argues that Plaintiffs have not suffered an injury because the Products offer a money-back guarantee. Next, Defendant argues that Plaintiffs lack standing to seek equitable monetary or injunctive relief. Lastly, Defendant argues that Plaintiffs lack standing to raise claims relating to Products they did not purchase and did not test. ECF No. 12, at 30-34.

Because standing is a threshold issue, the Court addresses Defendant's standing arguments before reaching the arguments regarding the sufficiency of Plaintiffs' claims.

**A. Defendant's Money-Back Guarantee Does Not Defeat Standing**

Defendant argues that Plaintiffs have not suffered an injury in fact—and therefore lack Article III standing—because the Products offer a money-back guarantee. ECF No. 12, at 21. In support of its claim, Defendant cites cases exclusively from the Southern and Middle Districts of Florida. *Id.* Defendant has offered no authority from this Circuit adopting Defendant's reasoning that a money-back guarantee precludes a Plaintiff from asserting an injury in fact for Article III standing.

Plaintiffs, however, have shown that courts in this Circuit "regularly reject this argument," as it "conflates injury with remedy." *Gamino v. Thinx Inc.*, No. ED-CV-23-2067-JGB-SHKX, 2024 WL 2429307, at *6 (C.D. Cal. Apr. 18, 2024) (quoting *Chowning v. Kohl's Department Stores, Inc.*, CV-15-08673 RGK-SPx, 2016 WL 1072129, at *4 (C.D. Cal. Mar. 15, 2016)). *See also Dotson v. Europharma, Inc.*, No. 2:20-cv-09651-AB-AGR, 2021 WL 4826611, at *7-8 (C.D. Cal. May 27, 2021) (rejecting a defendant's argument that their moneyback guarantee defeated Plaintiff's claim for damages because "both Plaintiff's interest in this lawsuit and the Court's ability to grant relief remains"); *Perea v. Walgreen Co.*, 939 F. Supp. 2d 1026, 1035 (C.D. Cal. 2013) ("[T]he Court finds unavailing and unsupported by any legal precedent Defendant's argument that Walgreens's 'money-back guarantee' deprives Plaintiff of the ability to allege that she suffered economic injury."). This Court agrees with others in this Circuit in finding that a

plaintiff suffers an injury when she allegedly relies on a deceptive practice and parts with more money than she otherwise would, and that such an injury is not eliminated by the presence of a money-back guarantee. *Gamino*, 2024 WL 2429307, at *6; *Chowning*, 2016 WL 1072129, at *4. Thus, the Court rejects Defendant's argument that the Products' money-back guarantee defeats standing.

### B. Plaintiffs Have Standing to Seek Equitable Monetary Relief

Plaintiffs seek restitution and injunctive relief under the UCL, ECF No. 8, ¶¶ 79, 81; restitution and injunctive relief under the FAL, *id.* ¶ 90, and restitution, disgorgement, injunctive relief, and damages under the CLRA, *id.* ¶ 105, 107. Defendant moves to dismiss the equitable monetary claims under the UCL, FAL, and CLRA, arguing that Plaintiff has an adequate remedy at law, and therefore dismissal of the equitable claims is required by *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). ECF No. 12, at 31-32. Plaintiffs counter that courts in this Circuit regularly allow plaintiffs to plead both equitable and legal remedies at the pleadings stage.

Under "traditional principles governing equitable remedies in federal court," a plaintiff must "establish that she lacks an adequate remedy at law before securing equitable restitution for past harm[.]" *Sonner*, 971 F.3d at 844. "This means that a plaintiff 'must, at a minimum, plead that she lacks adequate remedies at law if she seeks equitable relief.'" *Wysocki v. Chobani*, LLC, 828 F. Supp. 3d 1061, 1082 (S.D. Cal. 2026) (quoting *Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools*, 673 F. Supp. 3d 1083, 1093 (N.D. Cal. 2023)).

There is currently an "intra-circuit split" on (1) whether courts may allow UCL or FAL claims to proceed past pleading when other adequate remedies exist and (2) how "exacting of a standard *Sonner* imposes on plaintiffs who plead claims for equitable and legal remedies at the pleading stage." *Jeong v. Nexo Fin. LLC*, No. 21-cv-02392-BLF, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022) (citing *Byton N. Am. Co. v. Breitfeld*,

No. CV-19-10563-DMG-JEMx, 2020 WL 3802700, at *9 (C.D. Cal. Apr. 28, 2020)). A number of district courts have concluded that *Sonner* does not preclude a plaintiff, at this stage, from pleading equitable remedies in the alternative. *See*, *e.g.*, *Nacarino v. Chobani, LLC*, 668 F. Supp. 3d 881, 895-97 (N.D. Cal. 2022) (denying dismissal of restitution claim, even if it "may be revisited at a later stage"); *Yeomans v. World Fin. Grp. Ins. Agency, Inc*., No. 19-cv-00792-EMC, 2022 WL 844152, at *7 (N.D. Cal. Mar. 22, 2022); *Lopez v. Abbott Lab'ys*, No. 3:22-CV-00421-L-RBB, 2023 WL 2657627, at *4 (S.D. Cal. Mar. 27, 2023) ("Because the instant case is at the pleading stage . . . Plaintiff can allege legal and equitable claims in the alternative."). Further, because *Sonner* was decided at a later posture, it does not directly address what exactly a plaintiff must allege at the pleading stage. *See Sonner*, 971 F.3d 834. Allowing claims to move forward is also consistent with Federal Rule of Civil Procedure 8, which allows for pleading in the alternative. Fed. R. Civ. P. 8(a)(3) (a claim for relief must contain "a demand for relief sought, which may include relief in the alternative or different types of relief"); *see also Byton*, 2020 WL 3802700, at *9 ("[T]he Ninth Circuit's general rule is that plaintiffs may plead alternative claims, even if those claims are inconsistent.").

Plaintiffs allege that they lack an adequate remedy at law because: (1) discovery—through obtaining a damages expert—may demonstrate that legal remedies are inadequate, ECF No. 8, ¶ 12; (2) the equitable relief claims under the UCL apply to a broader scope of injuries than those for damages under the CLRA, ECF No. 8, ¶ 13; and (3) the statutes of limitations vary, *id.* ¶ 14. Thus, Plaintiffs have pled the inadequacy of their legal remedies beyond conclusory statements, which is sufficient at the pleading stage. *See Barton v. Procter & Gamble Co*., 766 F. Supp. 3d 1045, 1067 (S.D. Cal. 2025) ("At minimum, Plaintiffs must plead inadequate legal remedies in the operative pleading to allege claims for equitable relief under the UCL, FAL, and CLRA."); *Wadeea v. Mercedes-Benz USA, LLC*, 758 F. Supp. 3d 1217, 1228 (S.D. Cal. 2024) (allowing

alternative pleading of legal and equitable claims where "legal remedies may later prove to be inadequate after the benefit of discovery."); *Eason v. Roman Cath. Bishop of San Diego*, 414 F. Supp. 3d 1276, 1282 (S.D. Cal. 2019) (allowing pleading of alternative equitable remedy because, in part, "[d]iscovery may reveal that [the plaintiff's] claims providing legal remedies are inadequate for any number of reasons, despite the fact that their allegations appear adequate." (internal quotation marks and citation omitted)).

Defendant argues that Plaintiffs' claims that they lack an adequate remedy at law cannot succeed because the conduct challenged under each statute is the same. ECF No. 12, at 31-32. However, though Plaintiffs' injuries are by their nature economic and the conduct and theory underlying the CLRA, UCL, and FAL claims "appear to be essentially the same," *Shuman v. SquareTrade Inc.*, No. 20-cv-02725-JCS, 2021 WL 5113182, at *11 (N.D. Cal. Nov. 3, 2021), courts in this Circuit have allowed plaintiffs to plead both equitable and legal claims in the same or similar circumstances. *See, e.g., Coleman v. Mondelez Int'l Inc.*, 554 F. Supp. 3d 1055, 1065 (C.D. Cal. 2021); *Jeong*, 2022 WL 174236, at *27; *Krause-Pettai v. Unilever United States, Inc.*, No. 20cv1672-DMS-BLM, 2021 WL 1597931, at *4 (S.D. Cal. Apr. 23, 2021).

Defendant's "contention that equitable [monetary] relief is precluded here is better suited on a motion for summary judgment, when the Court and the parties will have the benefit of discovery." *Wadeea*, 758 F. Supp. 3d at 1229. Thus, the Court denies Defendant's motion to dismiss Plaintiffs' equitable claims on the grounds that Plaintiffs have an adequate remedy at law.

**C. Plaintiffs Have Standing to Seek Injunctive Relief**

Next, Defendant alleges that Plaintiffs lack standing to seek injunctive relief because their "allegations of future injury are implausible." ECF No. 12, at 32.

To establish standing for injunctive relief, a plaintiff must plead a "threat of injury" that is "actual and imminent, not conjectural or hypothetical." *Davidson v. Kimberly-*

*Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). A wronged plaintiff is entitled to injunctive relief only if they can show a "real or immediate threat that [they] will again be wronged in a similar way." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (citations and internal punctuation omitted). "'[A] previously deceived customer may have standing to seek an injunction against false advertising or labeling' based on 'inability to rely on the advertising in the future,' 'even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an actual and imminent, not conjectural or hypothetical threat of future harm.'" *Hamman v. Cava Grp., Inc.*, No. 22-CV-593-MMA (MSB), 2023 WL 3450654, at *6 (S.D. Cal. Feb. 8, 2023) (quoting *Davidson*, 889 F.3d at 967, 969). In sum, "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." *Davidson*, 889 F.3d at 969.

Here, Plaintiffs have alleged that they continue to desire to purchase the Products and would purchase them if they did not contain PFAS, but they are "unable to rely on the advertising and packaging" when making future purchasing decisions. ECF No. 8, ¶¶ 6, 8. They further allege that they will "be harmed if, in the future, [they are] left to guess whether [Defendant's] Products contain ingredients like PFAS and whether the Products are worth the prices charged." *Id.*

"An actionable cognizable injury exists where a plaintiff alleges that they cannot rely on defendant's labeling when deciding whether to purchase products in the future." *Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 916 (E.D. Cal. 2020). Courts in this Circuit have found that allegations like those made by Plaintiffs are sufficient for a claim for injunctive relief to survive a motion to dismiss. *See Roper*, 510 F. Supp. 3d at 916; *Hamman*, 2023 WL 3450654, at *6 (finding plaintiff plausibly pled threat of future injury where plaintiffs "alleged that they would like to purchase Defendant's Products in

the future, but are unable to determine if the Products are actually healthy, safe, and sustainable because they cannot rely on the representations in Defendant's current advertise and marketing scheme that omit any reference to PFAS." (internal quotation marks omitted)). This Court agrees. Thus, the Court finds that Plaintiffs have standing to seek injunctive to relief.

### D. Plaintiffs Have Standing to Bring Claims Regarding Products They Did Not Purchase or Test

There is no controlling authority in the Ninth Circuit on whether plaintiffs in a class action lawsuit have standing to assert claims based on products they did not purchase. *Anderberg v. Hain Celestial Grp., Inc.*, 652 F. Supp. 3d 1232, 1240 (S.D. Cal. 2023); *Renn v. Otay Lakes Brewery, LLC*, 23-cv-01139-GPC(BLM), 2023 WL 6050582, at *3 (S.D. Cal. Sept. 14, 2023). Some courts have held that plaintiffs lack such standing. *See, e.g., Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 909 (C.D. Cal. 2021) (finding no standing to bring claims for products plaintiff did not purchase); *Granfield v. NVIDIA Corp*., No. C 11-05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) (same); *Ringler v. J.M. Smucker Co*., 783 F. Supp. 3d 1229 (C.D. Cal. 2025) ("[T]he 'substantial similarity' analysis appears to be inconsistent with the basic concept of standing." (internal quotation marks and citation omitted)). However, "[t]he prevailing view in the Ninth Circuit is to allow class action plaintiffs to bring claims for products they did not purchase as long as the products and alleged misrepresentations are substantially similar." *Corbett v. Pharmacare U.S., Inc*., 544 F. Supp. 3d 996, 1011 (S.D. Cal. 2021); *Renn*, 2023 WL 6050582, at *3 (applying "substantially similar" test); *Brown v. Food for Life Baking Co*., Inc., 658 F. Supp. 3d 732 (N.D. Cal. 2023) (same); *Roffman v. Rebbl, Inc*., 653 F. Supp. 3d 723, 728–29 (N.D. Cal. 2023) (same). This Court has applied the substantially similar test in the past, *see*, *e.g.*, *Corbett*, 544 F. Supp. 3d at 1011; *Renn*, 2023 WL 6050582, at *3, and sees no reason to stray from this approach here.

Here, at the pleading stage, Plaintiffs have adequately alleged that the Products at issue—Miracle-Gro soil and fertilizer products with packaging that represents they are organic—are substantially similar. Plaintiffs allege that all Products (1) are Miracle-Gro soil and fertilizer products ECF No. 8, ¶ 1; (2) are labeled as organic, ECF No. 8, ¶ 1, 29; (3) are marketed as organic and safe to use on edible plants; ECF No. 8, at ¶¶ 50, 52; (4) contain PFAS, *id.* ¶¶ 1-2, ¶ 58; and (5) fail to disclose the presence of PFAS, *id.* ¶ 58. In support of their allegations that the Products contain PFAS, Plaintiffs conducted independent testing of a subset of seven different Miracle-Gro Products labeled as organic. *Id.* ¶¶ 30-49. The sample subset Products were acquired from Northern and Southern California, New York, New Jersey, and Oregon in 2024 and 2025. *Id.* ¶ 30. Each sampled Product—including the actual Products purchased by Plaintiffs—contained PFAS in amounts beyond certain identified EPA thresholds. ECF No. 8, ¶¶ 34-35, 37-38, 40, 42, 44, 46, 48. Specifically, all seven of the tested Products contained PFOS, and six of the seven contained both PFOS and PFOA. *Id.* In light of these allegations, the Court finds that Plaintiffs have alleged a "sufficient similarity between the products purchased and not purchased." *Astiana v. Dreyer's Grand Ice Cream, Inc*., No. C-11-2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012).

Defendants further argue that Plaintiffs' lack standing as to those products not tested. The Court disagrees. Based on the alleged similarity of the Products and the testing conducted—wherein each tested Product contained either PFOS or both PFOS and PFOA in amounts exceeding certain EPA screening thresholds—Plaintiffs have averred sufficient facts from which this Court can make the reasonable inference that the Products, including those not directly tested, contain PFAS. *See*, *e.g.*, *Solis v. Coty, Inc*., No. 22-CV-0400-BAS-NLS, 2023 WL 2394640, at *11 (S.D. Cal. Mar. 7, 2023) ("Thus, to survive Defendants' facial challenge, Solis need not explicitly allege the unit of Product she purchased actually contained PFAS or that all units of the Product contain PFAS, but

may simply aver facts from which this Court can make such reasonable inferences.") (dismissing for lack of standing on other grounds); *Krakauer v. Recreational Equip., Inc.*, No. C22-5830 BHS, 2024 WL 1494489, at *8 (W.D. Wash. Mar. 29, 2024) (to plausibly allege PFAS contamination, plaintiff must establish that products are substantially similar to those that contain PFAS).

However, the Court does take issue with extending Plaintiffs' standing to claims regarding Products not identified in the complaint. Plaintiffs allege that the Products at issue in this case "consist of all Scotts Miracle-Gro soil and fertilizer products with packaging that represents they are organic." ECF No. 8, ¶ 29. Plaintiffs go on to state that the challenged Products "include but are not limited to" a list of twelve products. *Id.* Here, Plaintiffs' allegations rely not only on Defendant's assertion that the Products are organic, but also on various labeling representations and similarities, which Plaintiffs demonstrate by attaching images of each Product label to the complaint. ECF No. 8-1. The Court does not find that Plaintiffs can sustain these claims related to various unidentified Products that may or may not share similar packaging. Thus, the Court limits Plaintiffs' claims to those relating to the Products identified in the Complaint.

The Court concludes that Plaintiffs have standing to raise their claims as related to the Products identified in the complaint. Thus, the Court DENIES Defendant's motion to dismiss Plaintiffs' complaint for lack of subject-matter jurisdiction under Rule 12(b)(1).

### III. California's Safe Harbor Doctrine Limits Plaintiffs' Claims

Defendant next argues that California's safe harbor rule precludes Plaintiffs' claims, because California regulations permit Defendant's labeling of its products as organic. ECF No. 12, at 15–20. The Court agrees that Plaintiffs' claims are barred by the safe harbor doctrine to the extent they challenge Defendant's use of the term "organic."

//

//

**A. The Safe Harbor Doctrine**

"In California, unfair competition claims are subject to the safe harbor doctrine, which precludes plaintiffs from bringing claims based on 'actions the Legislature permits.'" *Ebner v. Fresh, Inc*., 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Cel-Tech Comms. Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 182 (1999)). The doctrine applies to claims under the UCL, CLRA, and FAL. *Id.*; *see also Alvarez v. Chevron Corp.,* 656 F.3d 925, 933–34 (9th Cir. 2011).

The California Supreme Court has outlined the safe harbor doctrine as follows:

> Although the unfair competition law's scope is sweeping, it is not unlimited. . . . Specific legislation may limit the judiciary's power to declare conduct unfair. If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a "safe harbor," plaintiffs may not use the general unfair competition law to assault that harbor.

*Cel–Tech,* 20 Cal. 4th at 182. Thus, under the safe harbor doctrine, "[t]o forestall an action under the unfair competition law, another provision must actually 'bar' the action or clearly permit the conduct." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1164 (9th Cir. 2012) (quoting *Cel-Tech*, 20 Cal. 4th at 183). The relevant provision may be a statute or a regulation. *Id.* at 1166. If the provision permits the conduct, a plaintiff may not use general unfair competition law to argue that the permitted conduct is unlawful. *Barber v. Nestle USA, Inc*., 154 F. Supp. 3d 954, 958 (C.D. Cal. 2015), *aff'd*, 730 F. App'x 464 (9th Cir. 2018).

**B. California's Organic Labeling Regulations for Fertilizers**

Here, the California Department of Food and Agriculture ("CDFA") must review and approve all fertilizer labels before fertilizers are distributed to the consumer market. Cal. Food & Agri. Code § 14631. Of relevance in this case, "[f]ertilizing material labels . . . displaying the term 'organic' . . . shall be registered as an organic input material." Cal.

Code Regs. Tit. 3 § 2320.4. "Organic input material," or "OIM" is defined as "any bulk or packaged commercial fertilizer, agricultural mineral, beneficial substance, or specialty fertilizer, excluding pesticides, that is to be used in organic crop and food production and that complies with the requirements of the National Organic Program standards." Cal. Food Agri. Code § 14550.5. An entity seeking to register organic input material must pay a registration fee to support the "additional departmental resources and review time" expended to "ensure that nutrient guarantees and claims are scientifically feasible and meet the National Organic Program standards." Cal. Food. & Agri. Code § 14601. The OIM registration application requests various information about a given product's ingredients, suppliers, manufacturing processes, and more. Cal. Code Regs. Tit. 3 § 2320.2. The CDFA may refuse to register any fertilizer or packaged soil "for which any false or misleading claim is made or implied." Cal. Food & Agri. Code § 14601(h)(1). The CDFA maintains an official list of registered organic input material ("OIM"). Cal. Code Regs. Tit. 3 §§ 2320.4, 2320.5.

### C. Safe Harbor Bars Plaintiffs' Unfair Competition Claims Based On Defendant's Use of the Term "Organic"

To the extent Plaintiffs challenge the labeling of the Products as organic, such claims are barred by the safe harbor doctrine, as California regulations affirmatively permit such labeling. *See Ebner*, 838 F.3d at 963. Defendant has produced—and the Court has properly taken judicial notice of—the CDFA's list of "Registered OIM Products." *See* ECF No. 12-1, at 55–138. Each of the Products at issue in Plaintiffs' complaint appears on the Registered OIM Products list. *See* ECF 12-1, at 101-103.[3] The Products "Registered

[3] Defendant notes that one of the Products—Miracle-Gro Organic Choice Potting Mix—is not on the current Organic Input Materials ("OIM") list because it was discontinued in 2019. ECF No. 12, at 17. However, the Court has taken judicial notice of a prior OIM list that includes Miracle-Gro Organic Choice Potting Mix. ECF No. 12-1, at 256.

OIM" status demonstrates that (1) Defendant applied for OIM status for each Product, and that (2) the CDFA has determined that each Product meets the definition of organic input materials. Further, the registration allows each Product to bear the term "organic" on its labeling. Cal. Code Regs. Tit. 3 § 2320.4 ("Fertilizing material labels . . . displaying the term 'organic' . . . shall be registered as an organic input material."). Thus, Defendant's use of the term "organic" on its products is expressly permitted by relevant California regulatory scheme, and Plaintiffs cannot use unfair competition law to challenge the permitted conduct.

To the extent that Plaintiffs take issue with what the state of California considers when registering products as "organic input material"—and thereby allowing products to display the term "organic"—a suit against Defendant Scotts is not the appropriate avenue to raise such grievances. Indeed, "that is precisely the sort of legislative second-guessing that the safe harbor doctrine guards against." *Barber*, 154 F. Supp. 3d at 962. Consequently, given the regulatory scheme in place, Plaintiffs' claims that Defendant misrepresented the Products as organic are barred by the safe harbor doctrine.

Accordingly, the Court grants Defendant's motion to dismiss as to Plaintiffs' UCL, CLRA, and FAL claims to the extent they allege that Defendant misrepresented its Products as organic. Because no amendment would enable Plaintiffs' organic-based misrepresentation claims to evade the safe harbor doctrine, the dismissal is without leave to amend. *Barber*, 154 F. Supp. 3d at 964.

**1. Dismissal On Safe Harbor Grounds Is Not Premature**

Plaintiffs argue that Defendant's safe harbor argument is premature, as it is an affirmative defense not properly addressed at the motion to dismiss stage. ECF No. 17, at 12-13. However, consumer protection safe harbor claims are routinely addressed at the motion to dismiss stage by the Ninth Circuit and district courts within it. *See*, *e.g.*, *Ebner v. Fresh, Inc*., 838 F.3d 958 (9th Cir. 2016); *Alvarez v. Chevron Corp*., 656 F.3d 925 (9th

Cir. 2011); *Davis*, 691 F.3d at 1167; *Hadley v. Kellogg Sales Co*., 273 F. Supp. 3d 1052, 1070 (N.D. Cal. 2017); *Alaei v. Rockstar, Inc*., 224 F. Supp. 3d 992 (S.D. Cal. 2016); *Angiano v. Anheuser-Busch InBev Worldwide, Inc*., 532 F. Supp. 3d 911 (C.D. Cal. 2021). Further, the applicable California regulations and the Products' judicially-noticed status as registered organic input materials clearly indicate to the Court that Defendant's use of the term organic is permitted by law. Thus, this Court joins others in dismissing the claims on safe harbor grounds at this juncture.

**D. The Safe Harbor Extends to Plaintiffs' Common Law Claims**

The Court finds that the safe harbor applies to Plaintiffs' consumer protection claims under the CLRA, UCL, and FAL as well as Plaintiffs' common law claims based on the same conduct. The Court acknowledges that there is a split in authority as to whether the safe harbor spans beyond consumer protection statutes. *Compare Hood v. Handi-Foil Corp*., 2024 WL 4008711, at *1, *3 (N.D. Cal. Aug. 29, 2024) (where safe harbor applied, dismissing all state law claims arising from same conduct) *and McCoy v. McCormick & Co., Inc*., 2025 WL 1918546, at *10–11 (E.D. Cal. July 11, 2025), *report and recommendation adopted*, 2025 WL 2315457 (E.D. Cal. Aug. 12, 2025) (same), *with Samberg v. Whitestone Home Furnishings, LLC*, No. 25-CV-10767-JSC, 2026 WL 1283386, at *6 (N.D. Cal. May 11, 2026) (limiting safe harbor to only consumer protection claims), *and Daldalian v. Pepsico, Inc*., No. 2:25-CV-01491-WLH-E, 2025 WL 2778326, at *5 (C.D. Cal. Sept. 3, 2025) (same). However, to the extent that the safe harbor doctrine functions to "preclude[] plaintiffs from bringing claims based on 'actions the legislature permits,'" *Ebner*, 838 F.3d at 963 (quoting *Cel-Tech*, 20 Cal. 4th at 183), the doctrine's purpose is only well-served if it applies to all such claims, not only those under the consumer protection statutes. Finding otherwise would enable plaintiffs to simply circumvent the doctrine entirely by framing consumer protection claims within common law causes of action.

Thus, the Court will not limit the safe harbor's application to Plaintiffs' UCL, CLRA, and FAL claims. Because the safe harbor precludes liability for Defendant's use of the term organic, "it follows that no state law claim will lie to the extent it arises out of the same conduct." *Flodin v. Cent. Garden & Pet Co*., No. 21-CV-01631-JST, 2023 WL 3607278, at *2 (N.D. Cal. Mar. 9, 2023) (*Baum v. J-B Weld Co., LLC*, No. 19-cv-01718-EMC, 2020 WL 4923624, at *3–*4 (N.D. Cal. Aug. 21, 2020)). Plaintiff's breach of express warranty, breach of implied warranty, and unjust enrichment claims are all premised on Defendant's representation that the Products are organic. ECF No. 8, ¶ 110 ("Scotts has expressly warranted on the packaging of the Products that they are organic."; *id.* ¶ 119 ("Scotts made an implied promise that the Products were organic."); *id.* ¶ 125 ("It is inequitable and unjust for Scotts to retain these revenues because Scotts falsely represented that the Products were organic."). Because this conduct was permitted by California regulations, Plaintiff's common law claims are also barred by the safe harbor doctrine. The Court therefore grants Defendant's motion to dismiss Plaintiffs' breach of express warranty, breach of implied warranty, and unjust enrichment claims. To the extent that these claims concern Defendant's use of the term "organic," the dismissal is without leave to amend.

### E. Safe Harbor Does Not Bar Plaintiffs' Omissions Claims or Alternate Misrepresentation Claims

Plaintiffs' complaint also challenges Defendant's failure to disclose the presence of PFAS in the Products. *See* ECF No. 17, at 11 ("Even if Defendant was permitted to label its products as Organic, Defendant's packaging omits the material fact that it contains PFAS[.]"); ECF No. 8, ¶ 98 ("Scotts knew or should have known that . . . by omitting the presence of PFAS in its products, it was omitting a material fact."); *id.* ¶ 2 ("Scotts fails to disclose that PFAS are present in its Products because it knows that this likely would influence [consumers'] purchasing decisions[.]"). Unlike Plaintiffs' claims regarding Defendant's use of the term organic, "this claim does not fall within the safe harbor

because there is no law expressly permitting the omission of supplemental statements." *Ebner*, 838 F.3d at 964. Thus, "because the omission of supplemental statements is not expressly and affirmatively permitted by law, Plaintiff's claim that the [labeling] is nonetheless deceptive due to the lack of a supplemental statement [disclosing PFAS] is not precluded by the safe harbor doctrine." *Id. See also*, *Hadley*, 273 F. Supp. 3d at 1070 ("[C]ompliance with FDA labeling requirements does not create a safe harbor for all omissions.").

At this juncture, the safe harbor doctrine also does not bar Plaintiffs' misrepresentation claims that do not stem from Defendant's labeling of the product as organic. Specifically, Plaintiffs allege that Defendant "advertises to consumers that the Products are . . . safe to use on edible plants and residential gardening," and that "[t]hese representations for each Product are false." ECF No. 8, ¶ 50. Such a claim is not grounded in Defendant's labeling of the products as organic and is therefore not barred by the safe harbor doctrine.

**IV. UCL, FAL, and CLRA Claims**

California's three main consumer protection statutes are summarized as follows:

> The UCL [proscribes] business practices that are 'unlawful, unfair or fraudulent,' Cal. Bus. & Prof. Code § 17200[;] the FAL prohibits the dissemination of any advertising 'which is untrue or misleading,' Cal. Bus. & Prof. Code § 17500[;] and the CLRA declares specific acts and practices in the sale of goods or services to be unlawful, including making affirmative misrepresentations or omissions regarding the 'standard, quality, or grade' of a particular good or service, Cal. Civ. Code § 1770(a).

*Grausz v. Hershey Co.*, 713 F. Supp. 3d 818, 826 (S.D. Cal. 2024) (quoting *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014)). Each "prong" of the UCL—unlawful, unfair, and fraudulent—"provides a separate and distinct theory of liability." *Hadley*, 243 F. Supp. 3d at 1089. Plaintiffs raise

a claim under each. *See* ECF No. 8, ¶¶ 68-79. The Court will first analyze the FAL, CLRA, and fraudulent prong of the UCL together. It will then address the unlawful and unfair prongs of the UCL.

### A. FAL, CLRA, and Fraudulent Prong of the UCL

"Under the FAL, the CLRA, and the fraudulent prong of the UCL, conduct is considered deceptive or misleading if the conduct is 'likely to deceive [a] reasonable consumer.'" *Burnett v. Walmart, Inc.*, No. 4:25-CV-00228-YGR, 821 F. Supp. 3d 1036, 1043 (N.D. Cal. 2025) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). "Because the same standard for fraudulent activity governs all three statutes, courts often analyze the three statutes together." *Id.*

"To state a fraudulent omission or misrepresentation claim under the CLRA, FAL, or UCL, a plaintiff must plead (1) misrepresentation or omission, (2) reliance, and (3) damages." *Grausz*, 713 F. Supp. 3d at 826.

#### 1. Misrepresentation Theory

Plaintiffs' misrepresentation theory primarily rests on Defendant's use of the term organic. The Court has already held that the safe harbor doctrine bars any such claim, as California regulations permit Defendant's use of the term organic. However, Plaintiff also alleges that Defendant "advertises to consumers that the Products are . . . safe to use on edible plants and residential gardening," by "providing images of tomatoes, peppers, and strawberries surrounded by soil." ECF No. 8, ¶¶ 50, 52. Plaintiff further alleges that this "representation[] for each Product [is] false," *id.* ¶ 50, because "[e]xposure to PFAS, even at low parts-per-trillion (ppt) can build up in the human body over time and cause severe adverse health effects," *id.* ¶ 24. Because this claim does not rely on Defendant's assertion that the products are organic, it is not barred by the safe harbor doctrine.

To state a misrepresentation claim under the CLRA, UCL, and FAL, a plaintiff must plead (1) misrepresentation, (2) reliance, and (3) damages, "all with the particularity

required by Rule 9(b)." *Boyd v. SunButter, LLC*, 762 F. Supp. 3d 931, 941 (C.D. Cal. 2025), *adopted*, No. CV 24-7873-GW-BFMX, 2025 WL 84700 (C.D. Cal. Jan. 13, 2025). Plaintiffs' misrepresentation claim premised on the imagery of fruits and vegetables in soil on the Product labels fails because Plaintiffs have not pled that they were actually misled by the imagery indicating that the Products were safe to use on edible plants, or that they relied on that imagery. Instead, Plaintiffs allege that "Calcagno and Pathangi purchased the Products for their own personal use in reliance on Scotts's false representations that the Products contained only organic ingredients." ECF No. 8, ¶ 67. *See also id.* ¶¶ 5, 7 ("[Plaintiffs] relied on the representation that the soil was organic when [they] decided to purchase it."). Because Plaintiffs allege only that they relied on the representation that the soil was organic—not on the imagery implying that the soil was safe for growing edible plants—Plaintiffs alternate misrepresentation claim cannot survive. *See Boyd*, 762 F. Supp. 3d at 943.

The Court also considers whether Plaintiffs have adequately alleged that the imagery indicating that the Products are safe to use on edible plants is false and misleading. Under Rule 9(b), a consumer protection plaintiff must provide "specific factual pleading that indicates why allegedly fraudulent statements are false or misleading." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1090 (N.D. Cal. 2017). Plaintiff alleges that the imagery indicating that the Products are safe on edible plants is false or misleading because (1) the Products contain PFAS beyond the EPA Regional Screening Levels (RSLs) and Soil Screening Levels (SSLs); (2) "PFAS persist and bioaccumulate in the food chain when released into the environment and build up in the body when humans consume PFAS-contaminated food; and (3) "[e]xposure to PFAS, even at low parts-per-trillion (ppt) can build up in the human body over time and cause severe adverse health effects." ECF No. 8, ¶¶ 24, 34.

Defendant takes issue with the EPA thresholds identified by Plaintiffs (the RSLs and SSLs). Defendant sought judicial notice of EPA documentation providing additional insight into the EPA's RSL and SSL determinations and their relevance to the claims now before the Court. *See* ECF No. 12-2, at 3-4. However, at this juncture, the Court need not consider external evidence regarding the EPA thresholds identified by Plaintiff—these are fact questions concerning the merits of Plaintiffs' claims. It is enough that Plaintiffs have pled that testing revealed a presence of PFAS exceeding certain EPA benchmarks. *See Kanan v. Thinx Inc.*, No. CV 20-10341 JVS-JRP, 2021 WL 4464200, at *4-*5 (C.D. Cal. June 23, 2021) (plaintiff adequately alleged presence of PFAS to support alleged injury where they pled that testing revealed PFAS "above trace amounts."); *Hamman*, 2023 WL 3450654, at *5 (plaintiffs adequately alleged presence of PFAS to support alleged injury where they pled that the salad bowl products contained "heightened levels of organic fluorine."). Thus, the Court finds that Plaintiffs have sufficiently alleged that the imagery on the Products was misleading and why it was misleading. Even so, due to the lack of alleged reliance, Plaintiffs' alternative misrepresentation claim cannot survive Defendant's motion to dismiss.

**2. Omission Theory**

Because Plaintiffs' surviving theory of UCL, FAL and CLRA liability is based on Defendant's omission of the presence of PFAS, Plaintiffs must plausibly allege a fraudulent omission. *See Burnett*, 821 F. Supp. 3d at 1043; *Grausz*, 713 F. Supp. 3d at 826. "To plausibly allege a fraudulent omission, the omission must either (1) 'be contrary to a representation actually made by the defendant,' (a "partial omission"); or (2) 'an omission of a fact the defendant was obliged to disclose' (a "pure omission")." *Wysocki v. Chobani, LLC*, 828 F. Supp. 3d 1061, 1079 (S.D. Cal. Apr. 6, 2026) (quoting *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018)). Here, Plaintiffs make no allegations regarding an alleged duty to disclose. Thus, Plaintiffs pursue a partial omission claim and

must establish that the omission of PFAS is "contrary to" a representation actually made by Defendant.

Plaintiffs' claims regarding Defendant's alleged omissions are largely secondary to their claims regarding Defendant's alleged misrepresentation that the Products are organic. However, Plaintiffs do allege that Defendant (1) "represents that the Products are organic," ECF No. 8, ¶ 1; (2) "fails to disclose the PFAS are present in the Products," *id.* ¶ 2; and (3) PFAS are not organic, *id.* ¶ 28. Thus, Plaintiffs claim that the omission of a PFAS disclosure is "contrary to" the representation Defendant actually made that the Products are organic.

However, "[a] plaintiff cannot allege that a partial omission causes a duty to disclose . . . where they only claim that the defendant's marketing labels are outright false." *Wysocki*, 828 F. Supp. 3d at 1079 (citing *Hamman v. Cava Grp., Inc.*, No. 22-CV-593-MMA (MSB), 2023 WL 3450654, at *9 (S.D. Cal. Feb. 8, 2023)); *see also Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1013 (N.D. Cal. 2020) ("Indeed, the entire theory of a case based on partial omissions is that what is disclosed is in some sense true but that the whole truth is missing."). "This is because all misrepresentations are merely omissions of the facts that make the statement untrue." *Wysocki*, 828 F. Supp. 3d at 1080; *see also Hamman*, 2023 WL 3450654, at *9 ("Plaintiffs' theory of the case is not altered whether they describe the alleged misconduct as an outright misrepresentation of the Products as 'healthy' or as an omission of the PFAS, which makes the 'healthy' statements untrue.").

Plaintiff's allegations "make clear that Plaintiff[s] argue[] that the Products' labels"—particularly the claims that the Products are organic—"are outright false." *Id.* *See also* ECF No. 8, ¶ 1 ("Scotts falsely represents that the Products are organic even though they contain synthetic, non-organic, and harmful forever chemicals known as [PFAS]."); *id.* ¶ 72–73 ("Scotts engaged in fraudulent business practice by knowingly representing to consumers that the Products were organic," when the Products "are not, in

fact, organic."); *id.* ¶ 50 ("Scotts advertises to consumers that the Products are organic soil and/or fertilizers . . . These representations for each Product are false."). Accordingly, Plaintiffs fail to state a claim under a partial omission theory. *See Wysocki*, 828 F. Supp. 3d at 1079–80; *Ringler*, 783 F. Supp. 3d at 1242; *Hamman*, 2023 WL 3450654, at *9.

To the extent that Plaintiffs seek to base a partial omission claim on the theory that the presence of PFAS is "contrary to" the imagery indicating that the Products are safe for use on edible plants, the same reasoning applies. Plaintiffs again clearly argue that the suggestion that the Products are safe for use on edible plants is outright false. ECF No. 8, ¶ 50 ("Scotts advertises to consumers that the Products are . . . safe to use on edible plants and residential gardening. These representations for each Product are false."). Thus, Plaintiffs' allegations cannot sustain an omissions theory relating to the imagery on the Product packaging.

Accordingly, the Court grants Defendant's motion to dismiss Plaintiffs' omission claims under the CLRA, FAL, and fraudulent prong of the UCL. However, because Plaintiffs may possibly allege additional facts to cure the identified deficiencies, these claims are dismissed without prejudice and with leave to amend.

**B. UCL – Unlawful Prong**

Plaintiffs allege that Defendant's actions were unlawful per the UCL because they violated the FAL and CLRA. ECF No. 8, ¶¶ 77-78. However, the Court has already found that Plaintiffs' FAL and CLRA claims are (1) barred insofar as they challenge Defendant's representation of the Products as organic and (2) insufficiently pled to the extent they allege an alternative misrepresentation or a fraudulent omission. Thus, Plaintif's UCL claim cannot rely on the Defendant's alleged unlawful conduct under the FAL or CLRA.

Plaintiffs also allege that Defendant's Products are misbranded under California regulations because they do not comply with California's Food and Agricultural Code's definition of "natural organic fertilizer," which is defined as "materials derived from either

plant or animal products . . . which shall not be mixed with synthetic materials." Cal. Food & Agric. Code § 14548.

As discussed above, to the extent this claim is based on Defendant's lawful labeling of the Products as organic, it is barred by the safe harbor doctrine. However, Plaintiff has also failed to demonstrate any statutory violation. California's regulatory scheme requires only that the Products be registered Organic Input Material to bear the label organic. *See* Cal. Code Regs. Tit. 3 § 2320.4 ("Fertilizing material labels . . . displaying the term 'organic' . . . shall be registered as an organic input material."). Thus, to the extent California's definitions of "organic input material" and "natural organic fertilizer," may differ, *compare* Cal. Food. Agri. Code § 14550.5 (defining "organic input material") *with id.* § 14548 (defining "natural organic fertilizer"), only the former bears on Defendant's ability to label its Products as organic. Even if the definition of "natural organic fertilizer" did regulate Defendant's capacity to label its products as organic, Plaintiffs do not allege that Defendant has "mixed" PFAS with the plant or animal products from which the Products are derived such that they fail to meet the "natural organic fertilizer" definition.

Defendant's Products are registered organic input material, *see* ECF No. 12-1, at 101-103, and are therefore permitted to be labeled as organic under California law, *see* Cal. Code Regs. Tit. 3 § 2320.4. Such a practice is not unlawful under California's statute defining "natural organic fertilizer." Cal. Food & Agric. Code § 14548. Accordingly, Plaintiffs' cause of action under the unlawful prong of the UCL is dismissed.

**C. UCL - Unfair Prong**

"The unfair prong of the UCL prohibits a business practice that 'violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits.'" *Hadley*, 243 F. Supp. 3d at 1104 (quoting *McKell v. Wash. Mut.*, Inc., 142 Cal. App. 4th 1457, 1473). The exact contours of the

"unfair" prong are unsettled within California courts. *See id.*; *Hawkins v. Kroger Co.*, 512 F. Supp. 3d 1079, 1086 (S.D. Cal. 2021).

However, the Court need not assess the exact meaning of "unfair" in this case, because "where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *Hadley*, 243 F. Supp. 3d at 1104-1105 (citing *Punian v. Gillette Co.*, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016)); *see also Romoff v. Gen. Motors LLC*, 574 F. Supp. 3d 782, 790 (S.D. Cal. 2021), *aff'd*, No. 22-55170, 2023 WL 1097258 (9th Cir. Jan. 30, 2023) ("The factual basis for Plaintiffs' unfair-prong UCL claim is the same as for Plaintiffs' other claims. Because the Complaint fails to allege facts to support an inference that [defendant's] conduct is deceptive or violates any statutory provision, this Court joins numerous other district courts in holding that the unfair-prong claim must also be rejected.").

Plaintiffs' cause of action under the unfair prong of the UCL is based on the allegations that Scotts "engaged in a false advertising campaign to mislead consumers into believing that by purchasing Scotts' organic soil and/or fertilizer Products, they were receiving a product that only contained organic ingredients." ECF No. 8, ¶ 69. Thus, Plaintiffs' unfair prong UCL cause of action is based on the same contentions discussed above that Defendant (1) misrepresented that the Products were organic, or (2) fraudulently omitted that the products contained PFAS. Having found that Plaintiffs have failed to state a claim under the fraudulent and unlawful prongs of the UCL based on the same conduct, Plaintiffs have also failed to allege a cause of action under the unfair prong of the UCL.

Thus, for the same reasons the Court granted the motion to dismiss as to the above causes of action, Plaintiffs' claim under the unfair prong of the UCL is dismissed. *See Hadley*, 243 F. Supp. 3d at 1105.

**CONCLUSION**

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss Plaintiffs' claims for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

The Court GRANTS Defendant's motion to dismiss Plaintiffs' claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

To the extent that Plaintiffs' UCL, FAL, CLRA, breach of express warranty, breach of implied warranty, and unjust enrichment claims are premised on Defendant's allegedly misleading use of the term "organic," such claims are barred by the safe harbor doctrine. Accordingly, such claims are dismissed without leave to amend.

However, because Plaintiffs may be able to allege additional facts or theories to support an alternative misrepresentation claim or an omissions claim—or common law claims based on such alternative misrepresentations or omissions—those claims are dismissed with leave to amend. If Plaintiffs choose to file an amended complaint, they should do so within 30 days of the date of this order.

IT IS SO ORDERED.

Dated: September 11, 2026

Hon. Gonzalo P. Curiel
United States District Judge